IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAREN WOFFORD,

              Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

           Defendant.

CIVIL ACTION FILE

NO. 1:15-CV-01728-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for disability benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Karen Wofford filed applications for disability insurance benefits and supplemental security income on November 11, 2010, alleging that she became disabled on June 1, 2005. [Record ("R.") at 37, 137-48]. Plaintiff later amended her

alleged onset date to April 1, 2010. [R. at 37, 55]. After her applications were denied initially and on reconsideration, an administrative hearing was held on July 12, 2012. [R. at 37, 51-80, 85-96]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on July 19, 2012, and the Appeals Council denied Plaintiff's request for review on February 5, 2014. [R. at 2-8, 37-46]. Plaintiff filed her complaint in this court on May 19, 2015, seeking judicial review of the Commissioner's final decision. [Doc. 2]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has bipolar disorder, posttraumatic stress disorder, hypertension, and hepatitis C. [R. at 39]. These impairments are "severe" within the meaning of the Social Security regulations. [Id.]. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 40-41]. The ALJ found that Plaintiff was not capable of performing her past relevant work as a general clerk. [R. at 44]. However, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 45]. As a result, the ALJ concluded that Plaintiff had

2

not been under a disability at any time from April 1, 2010, the alleged disability onset date, through the date of the ALJ's decision.  [R. at 45].

The decision of the ALJ [R. at 37-46] states the relevant facts of this case as modified herein as follows:

The claimant wrote in her initial disability report that she was limited in her ability to work by hypertension, depression, and bipolar disorder.  (Exhibit 2E at 2). She wrote that she stopped working on April 1, 2010, because of her condition.  (Id.). In function reports, she and Willa Henderson, her friend and sponsor, wrote that the claimant was limited in her ability to lift, squat, walk, kneel, talk, hear, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (Exhibit 5E; Exhibit 9E).

At the administrative hearing, the claimant testified that she stopped working because she was laid off due to poor vision, troubles concentrating, and reduction of hours.  She testified that she had anxiety at work and would vomit frequently.  She alleged that she has episodes where her body feels hot and that she starts sweating twice a day.  The claimant said that she is fatigued from her hepatitis C but is not taking any medication for this.  She stated that her hypertension is not controlled with medication.  Her feet swell when she stands and walks for extended periods, and she

3

has severe stomach pain.  She sleeps three to four hours on average each night.  She said that she has a hard time being in public and isolates herself from people she knows.  She enjoys being outdoors and gardening.  She does not cook.  Willa Henderson also testified at the hearing about the claimant's limited activities, indicating that the claimant has been in and out of her house for several years.  She further testified that the claimant no longer drinks on a regular basis.  She indicated that the claimant has problems with isolation.

The medical evidence of record shows that the claimant received treatment for her hypertension from St. Joseph's Mercy Care Services and Grady Hospital in 2010 and 2011.  (Exhibit 8F; Exhibit 9F).  In November 2010, the claimant was seen at Grady for her hypertension and she reported no chest, orthopnea, palpitations, headaches, dizziness, or shortness of breath.  (Exhibit 4F at 129).  In January 2011, she was treated for a syncopal episode and a headache, but she reported feeling "fine" after being given additional antihypertensive medication.  (Exhibit 9F at 10).  In February 2011, the claimant was seen at Grady for newly diagnosed hepatitis C.  (Id. at 5).  She reported no headaches, chest pain, or dizziness from her hypertension and said that she was "[d]oing pretty good and no complaints today."  (Id.).  In March 2011, the claimant was seen at the Grady Liver Clinic for a new patient visit.  (Exhibit 15F at 8).

4

She denied jaundice, lower extremity edema, easy bruising, or increasing abdominal girth. (Id.). In January 2012, she again denied these symptoms when seen at Grady, but she did report decreased energy. (Exhibit 21F at 1). A physical examination was normal. (Id. at 1-2). The provider noted that the claimant was interested in receiving treatment for her hepatitis C but that she had "not show[n] up" to viral studies that had been ordered "several times over [the] last year." (Id. at 2).

In March 2011, the claimant told a Grady provider that she had relapsed with substance abuse in June 2010 but had been abstinent since October 2010. (Exhibit 15F at 8). She stated that her bipolar and depression symptoms had improved but that she was still dealing with stressors. (Id.). In June 2011, the claimant underwent a consultative psychological examination performed by Joan Kent, Ph.D. (Exhibit 13F). She told Dr. Kent that she had been laid off in April 2010 "for work slow down." (Id. at 3). Dr. Kent's mental status examination showed that the claimant's memory was intact and that she appeared to have good comprehension but poor to fair judgment. (Id. at 4). Dr. Kent opined that the claimant appears capable of routine work and that her social interaction is "fair but neediness can overtax others." (Id.). She also opined that the claimant appears capable in regards to concentration and directions. She diagnosed the claimant with mild depressed bipolar disorder, posttraumatic stress

5

disorder ("PTSD") with paranoia, and substance dependence in remission. (Id.). Dr. Kent wrote that the claimant did not demonstrate motivation to work and appeared "to have acclimated to a life relying on [Ms. Henderson] or shelters, unemployment checks, or other public money." (Id.).

In October 2011, the claimant reported that she was "[n]ow back off drugs" with no suicidal ideation and that she did not want to act on the voices she heard. (Exhibit 15F at 13). In January 2012, the claimant told a provider at Grady that her depressive/bipolar symptoms were stable on medication. (Exhibit 21F at 1). She reported that she had last used cocaine "2-3 months ago" and last used alcohol "yesterday." (Id.). In May 2012, the claimant presented to Grady Behavioral Health with a chief complaint of needing to go back on her medication. (Exhibit 21F at 5). She said that she had discontinued her medication in November 2011. (Id.). She reported that she had "relapsed on alcohol 2 months ago." (Id.). She reported mood swings, anxiety attacks, and difficulty sleeping. (Id.).

The claimant's treating psychiatrist, Nicole Garber, M.D., completed a questionnaire and wrote that the claimant had extreme difficulties in maintaining social functioning but "fair" abilities to relate predictably in social situations, interact with supervisors, demonstrate reliability, and behave in an emotionally stable manner.

6

(Exhibit 6F at 8, 9). Dr. Garber wrote that the claimant had extreme deficiencies of concentration, persistence, or pace but a "fair" ability to maintain attention and concentration. (Id. at 8, 12). Dr. Garber opined that the level of severity of the claimant's limitations dated back to 2005 but acknowledged that she first examined the claimant in July 2010. (Id. at 9, 10).

In a function report, the claimant wrote that she went to church, the library, and a women's meeting on a regular basis. (Exhibit 9E at 7). She indicated that she used to read a lot but had begun having trouble staying focused. (Id.). However, she reported being able to watch television programs and play computer games. (Id.). She reported that she sometimes felt that other people were against her. (Exhibit 9E at 8). In her third-party function report, Willa Henderson, the claimant's friend and sponsor, indicated that the claimant had no problems getting along with family, friends, neighbors, or others. (Exhibit 5E at 9). In June 2011, the claimant told the consultative examiner that she would "sit up all night talking" with others at the Women's Day Shelter. (Exhibit 13F at 3). She also told the examiner that she was independent in all activities of daily living, including bathing, dressing daily, cooking without causing a fire, cleaning, making the bed, and laundry. (Id.). The examiner

noted that the claimant "[a]ppear[ed] capable" with respect to concentration and following directions.  (Id. at 4).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is

such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'"  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R.

9

Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since April 1, 2010, the amended alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

10

3.    The claimant has the following severe impairments: bipolar disorder; posttraumatic stress disorder ("PTSD"); hypertension; and hepatitis C. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    The claimant has the residual functional capacity to perform medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes; and is limited to occupations which require only occasional interaction with supervisors, coworkers, and members of the general public.

6.    The claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on January 3, 1957, and was 53 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of the ALJ's decision. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R. at 39-45].

## V.   Discussion

Plaintiff Karen Wofford argues that the ALJ's decision denying her disability applications should be reversed. [Doc. 10]. According to Plaintiff, the ALJ erred because she failed to properly evaluate the opinion of treating physician Dr. Nicole Garber, who opined that Plaintiff's symptoms met Listings 12.04 and 12.06. [Id. at 8-13]. Plaintiff also contends that substantial evidence does not support the ALJ's finding that Plaintiff's allegations of disabling symptoms lacked credibility. [Id. at 13-16]. In addition, Plaintiff argues that the ALJ committed reversible error when she did not obtain testimony from a vocational expert ("VE") at the fifth step of the sequential evaluation. [Id. at 16-18]. Plaintiff's final argument will be addressed first.

As discussed *supra*, the burden is on the claimant at step four to prove that her impairments prevent her from performing her past relevant work. See Doughty, 245

F.3d at 1278.  If the claimant is able to satisfy this requirement, the burden then shifts to the Commissioner at step five to produce evidence showing that the claimant is able to perform other work that exists in significant numbers in the national economy.  <u>See</u> <u>Cowart v. Schweiker</u>, 662 F.2d 731, 736 (11th Cir. 1981) ("[O]nce the claimant establishes a prima facie case by showing that her impairment prevents her from performing her prior occupation, the burden shifts to the Secretary, who must produce evidence to show that the claimant is able to perform alternative substantial gainful work that exists in the national economy.").  "To meet this burden, it is incumbent on the [Commissioner] at a minimum, to come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs."  <u>Id.</u> (citations, quotation marks, and alterations omitted).

"There are two avenues by which the ALJ may determine whether a claimant has the ability to adjust to other work in the national economy: (i) by applying the 20 C.F.R. Part 404 Medical-Vocational Guidelines (the 'Grids'); and (ii) by the use of a VE, an expert on the kinds of jobs an individual can perform based on [her] capacity and impairments."  <u>Owens v. Comm'r of Social Security</u>, 508 Fed. Appx. 881, 883 (11th Cir. 2013) (citing <u>Phillips</u>, 357 F.3d at 1239-40).  "The grids provide tables based on work classifications of sedentary, light, medium, heavy or very heavy.  These

13

classifications are based on the exertional level, or 'primary strength activities,' the work requires, such as sitting, standing, walking, lifting, carrying, pushing, and pulling." Watson v. Astrue, 376 Fed. Appx. 953, 956 (11th Cir. 2010) (citing SSR 83-10). "In using the grids, the ALJ inputs the claimant's physical exertion level, skill level, age, education, and experience into a matrix, which establishes whether the claimant is disabled." Vuxta v. Comm'r of Social Security, 194 Fed. Appx. 874, 878 (11th Cir. 2006). "These tables constitute 'administrative notice' as to the number of unskilled jobs that exist in the national economy at the various exertional levels. Thus, when all the claimant's vocational factors coincide with the criteria in the table, 'the existence of jobs is established.'" Watson, 376 Fed. Appx. at 956 (quoting 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(b)). "If nonexertional impairments[1] exist, the ALJ may use the Grids as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through VE testimony, of the existence of jobs in the national economy that the claimant can perform." Owens, 508 Fed. Appx. at 883-84 (citing, e.g., Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992)). "It

---

[1]A nonexertional impairment is "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." SSR 83-10.

is only when the claimant can clearly do *unlimited* types of [] work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation and internal quotation marks omitted; emphasis in original).

In the present case, the ALJ found that Plaintiff's bipolar disorder, posttraumatic stress disorder, hypertension, and hepatitis C are severe nonexertional impairments. [R. at 39]. The ALJ also determined that Plaintiff's mental impairments cause moderate difficulties in social functioning and moderate difficulties in concentration, persistence, or pace. [R. at 40]. In addition, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium work except that she is "limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes; and is limited to occupations which require only occasional interaction with supervisors, coworkers, and members of the general public." [R. at 41]. Based on these findings, the ALJ concluded that Plaintiff had offered sufficient evidence to carry her burden of proof at the fourth step of the sequential evaluation because Plaintiff could not perform her past relevant work as a general clerk. This work was semiskilled, and the RFC assessment,

as determined by the ALJ, limits Plaintiff to unskilled work.  [R. at 44].  As a result, the burden shifted to the Commissioner at the fifth step to show that Plaintiff is able to perform other work that exists in significant numbers in the national economy.  See Cowart, 662 F.2d at 736.

The ALJ found at step five that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  [R. at 45].  The ALJ explained that she arrived at this conclusion by using the grids as a framework to evaluate the vocational factors.  [Id.].  Significant to the ALJ's finding at the fifth step was her conclusion that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled medium work."  [R. at 44-45].  The ALJ wrote that a "finding of 'not disabled' is therefore appropriate under the framework" of Medical-Vocational Rule 203.26 and Rule 203.19 because the "Medical-Vocational Rules take administrative notice of the number of unskilled jobs at the various exertional levels that exist throughout the national economy."  [R. at 45].  Although a VE was present at the administrative hearing, the ALJ did not rely on testimony from the VE in finding that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  [Id.].  The court finds that the

16

ALJ failed to apply the proper legal standards in reaching this conclusion and that substantial evidence does not support her opinion.

As previously noted, the Eleventh Circuit has held that if a claimant has any nonexertional impairments, the ALJ must introduce independent evidence, such as VE testimony, of the existence of jobs existing in significant numbers in the national economy that the claimant is able to perform. See Owens, 508 Fed. Appx. at 883-84 (citing, e.g., Marbury, 957 F.2d at 839). The ALJ in the present case found that Plaintiff has numerous severe nonexertional impairments and that these impairments cause difficulties and limitations in a variety of areas, such as social functioning and pace of production. Despite the existence of nonexertional impairments, the ALJ did not introduce VE testimony or other independent evidence of the existence of specific jobs that Plaintiff can perform. [R. at 39-41, 45]. Instead, the ALJ relied solely on the grids to find that Plaintiff is able to perform a number of unspecified jobs. [R. at 45]. This constituted error. "The ALJ should have elicited testimony from a vocational expert to interpret and evaluate [Plaintiff's] medically documented non-exertional psychological and emotional limitations . . . ." Allen, 880 F.2d at 1202. Because the ALJ failed to obtain testimony from a VE, substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled and that her nonexertional limitations

17

do not significantly erode the occupational base of unskilled medium work.  See Marbury, 957 F.2d at 839 ("An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert.").

The court also notes that the Eleventh Circuit has addressed language identical to that used by the ALJ and found it lacking.  In Owens, the court wrote:

> The ALJ's next conclusion–that "the additional limitations have little or no effect on the occupational base of unskilled medium work"–lacks sufficient clarity to allow a reviewing court to determine that the proper legal analysis was conducted. . . .  Even if we assume that the ALJ's vague reference to "the additional limitations" was intended to refer to [plaintiff's] nonexertional limitations, there is no indication of which nonexertional limitations the ALJ considered in making this conclusion. Nor is there any indication of the reason or reasons why the ALJ arrived at this conclusion.

508 Fed. Appx. at 884 (citations omitted).  Like the ALJ in Owens, the ALJ in the present case found that "the additional limitations have little or no effect on the occupational base of unskilled medium work."  [R. at 45].  However, the ALJ did not indicate which of Plaintiff's limitations were considered, nor did the ALJ offer an explanation in support of her conclusion.  A reviewing court, therefore, is unable to determine if the ALJ conducted the proper analysis in arriving at this finding.

18

Furthermore, substantial evidence does not support the ALJ's conclusion that the occupational base of unskilled medium work would not be eroded by "the additional limitations," which the court assumes refer to Plaintiff's nonexertional limitations. The ALJ's own findings and RFC assessment show that Plaintiff's nonexertional impairments resulted in numerous functional limitations. The ALJ found that Plaintiff was limited to occupations requiring relatively few workplace changes, only occasional interaction with others, work not performed in a fast-paced production environment, and work requiring no more than routine, repetitive tasks. Given these limitations, it is clear that Plaintiff is not able to perform a full range or unlimited types of work at the medium exertional level.[2]  [R. at 41].  Substantial evidence does not support the ALJ's decision, and her exclusive reliance on the grids constituted error.

In summary, the ALJ should have obtained VE testimony to interpret and evaluate Plaintiff's impairments rather than simply asserting, without explanation, that

---

[2]The court also notes that the ALJ found that Plaintiff's RFC limited her to medium work requiring no more than simple, routine, repetitive tasks. [R. at 41, 44]. The ALJ's "limitation to simple tasks [was] already contained within the unskilled limitation, and is not a limitation above and beyond that classification. A limitation to repetitive tasks, however, [was] not contained within the definition of unskilled." Vuxta, 194 Fed. Appx. at 878 (citing 20 C.F.R. § 404.1568(a)). This is another reason that remand is warranted in this case.

19

Plaintiff's additional limitations have little or no effect on the occupational base of unskilled medium work.  See Allen, 880 F.2d at 1202.  The ALJ did not carry her burden at step five by presenting evidence showing that there were specific jobs existing in significant numbers in the national economy that Plaintiff can perform.  The undersigned, therefore, finds that remand is required.

Plaintiff Wofford, as previously noted, offers a number of other arguments in support of her contention that the ALJ's decision should be reversed.  [Doc. 10].  These arguments, however, need not be addressed.  Upon remand, the Commissioner must resolve the errors at the fifth step of the sequential evaluation.  If another administrative hearing is conducted, the ALJ should elicit testimony from a VE to interpret and evaluate Plaintiff's nonexertional limitations and the effect they have on the occupational base.  Any hypothetical questions posed to a VE must accurately and comprehensively describe Plaintiff's impairments.  See Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  Because the further proceedings that are necessary upon remand could impact other aspects of the ALJ's assessment of Plaintiff's claims, the court finds it unnecessary to review Plaintiff's remaining arguments.  See Demenech v. Secretary of the Dep't of Health and Human Services, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that most of plaintiff's arguments did not need to be

addressed because remand was warranted on a significant issue); <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that it was unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); <u>Shaffer v. Comm'r of Social Security</u>, 2015 WL 5604768, at *2 (M.D. Fla. September 23, 2015) ("Because remand is required on the first issue in this case, it is unnecessary to review Plaintiff's second argument."); <u>Walker v. Astrue</u>, 2013 WL 5354213, at *19 n.22 (N.D. Ga. September 24, 2013) ("Because it is recommended that this case be remanded for further proceedings that could impact the ALJ's assessment of claimant and Shaw's credibility, her RFC, and her ability to perform other work in the national economy, the Court need not address the remaining issues raised by the claimant."); <u>Hall v. Astrue</u>, 2012 WL 2499177, at *4 n.8 (N.D. Ala. June 22, 2012) ("Because remand is warranted on these grounds, the court need not consider claimant's other arguments.").

## VI.   Conclusion

Based on the forgoing reasons and cited authority, the court concludes that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.[3]

      **SO ORDERED**, this 6th day of September, 2016.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[3]Although Plaintiff had been represented by attorney Jaya Ann Shurtliff, the court granted Ms. Shurtliff's motion to withdraw as counsel on July 28, 2016.  [Docs. 13, 14].

22